UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VESTER L. PATTERSON,

        Plaintiff,

    v.

SAM WONG DO, et al.,

        Defendants.

No. 2:15-cv-2117 AC

ORDER

    Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

    I.    <u>Application to Proceed In Forma Pauperis</u>

    Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). ECF No. 2. Accordingly, the request to proceed in forma pauperis will be granted.

    Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account.

1

These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

## II. Statutory Screening of Prisoner Complaints

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). "[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless." Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989) (citation and internal quotations omitted), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Id.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. (citations omitted). "[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp., 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Bell Atl. Corp., 550 U.S. at 556). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hosp. Trs., 425 U.S. 738, 740 (1976), as well as construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

### III. Complaint

The complaint consists of allegations against seven different defendants. ECF No. 1 at 3-6. Plaintiff claims he was diagnosed with hepatitis C, genome 1a, in 2011. Id. at 3. Plaintiff claims that defendants Wong and Hashemi violated his rights under the Eighth Amendment when they declined to treat him for hepatitis C. Id. at 3-6. He further alleges that defendants Smiley, Cryer, and Lewis violated his Eighth Amendment rights because they denied his administrative appeals seeking treatment. Id. at 4-6. Smiley, Cryer, and Lewis, as well as defendant Beard, are also alleged to be supervisors who do not enforce medical policies despite being aware of staff's failure to provide treatment. Id. at 6. Plaintiff also claims that defendant Kelso violated his Eighth Amendment rights because Kelso did not order treatment for plaintiff and failed to enforce an existing injunction against the California Department of Corrections and Rehabilitation ("CDCR") in his capacity as medical Receiver. Id. at 5-6. Plaintiff alleges that each of the defendants knew of his condition, and knew that death would result if it was left untreated. Id. Finally, plaintiff claims the defendants knew of a "CCHCS Health Care Policy" instructing CDCR medical staff that "all [hepatitis] genotypes are allowed treatment through preapproval through the HO CCHCS HCV oversight committee, including treatment options, and monitoring," and argues that defendants acted contrary to this policy when they denied treatment. Id. at 5-6.

////

1    Plaintiff seeks compensatory and punitive damages from each defendant. Id. at 6. He also seeks an injunction directing CDCR and defendants Beard and Kelso to designate him a high-risk medical inmate in order to receive hepatitis C treatment. Id. at 5.

IV.   Deliberate Indifference Claims

   A.   Eighth Amendment—Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel — or between medical professionals — regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi, 391 F.3d at 1058. To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the course of treatment the doctors chose was

4

medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

As an initial matter, plaintiff's allegation that he was diagnosed with hepatitis C is sufficient at the pleading stage to present a serious medical need for Eighth Amendment purposes. See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (Indications that a prisoner has a serious medical need for treatment include the "'existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" (quoting McGuckin, 974 F.2d at 1059-60)).

B. The Claim Against Wong Will Require a Response

In February 2014, plaintiff was seen by his physician, defendant Wong. ECF No. 1 at 3. According to the complaint, Wong determined that plaintiff did not require hepatitis C treatment until his condition worsened. Id. In March 2014, Wong once again determined plaintiff did not require hepatitis C treatment despite his request for treatment. Id. at 4. Plaintiff alleges that at this second appointment, Wong reviewed his blood test results and told him his "liver don't look that bad." Id. Plaintiff alleges that he had not had "recent lab work" done before this appointment, and that Wong refused to show him his blood test results when he asked. Id. He further alleges that Wong based this second conclusion in part on the opinion of another medical professional who had never examined him, and that Wong was "a bone doctor" who did not possess the "skill or experience" required to provide treatment. Id. at 3-4. Finally, plaintiff avers that defendant Wong failed to follow the "CCHCS Health Care Policy" to provide treatment. Id. at 5. He argues that defendant acted with intent to deliberately cause him further significant injury. Id.

Plaintiff alleges sufficient facts to show that Wong knew plaintiff had hepatitis C and that he acted with deliberate indifference when he decided not to treat plaintiff. Plaintiff claims that

5

he had not had any "recent lab work" done prior to his appointment in March 2014, which indicates that Wong made a decision to not treat plaintiff without properly testing him to evaluate the progression of his disease. A failure to administer standard diagnostic procedures may show deliberate indifference. See Watson v. Torruella, No. CIV S-06-1475 LKK EFB P, 2009 WL 3246805, at *6, 2009 U.S. Dist. LEXIS 93729, at *15-16 (E.D. Cal. Oct. 7, 2009). Wong knew that plaintiff had hepatitis C after their first meeting in February 2014, and it can be inferred that as a doctor he was aware of the possible risks associated with the disease. Defendant was also likely aware that plaintiff could suffer further significant harm without the medical testing necessary to make a proper diagnosis and provide appropriate treatment at the March 2014 appointment. Moreover, Wong's act of consulting with another physician for treatment advice does not overcome a claim for deliberate indifference since on the facts alleged it can be inferred that the second physician either based his opinion on plaintiff's outdated medical records or the second opinion was also outdated. Liberally construed, plaintiff allegations against defendant Wong are sufficient to state a claim for violation of his Eighth Amendment rights and a response will be required.

        C.      <u>Plaintiff Fails to State a Claim Against Hashemi</u>

In August 2014, plaintiff transferred prisons and came under the medical care of defendant Hashemi.[1] ECF No. 1 at 4. Plaintiff alleges that Hashemi examined him on multiple occasions and that he requested hepatitis C treatment at each appointment. Id. He asserts that Hashemi refused to "make any referrals to have me seen by a qualified physician." Id. Plaintiff also alleges that Hashemi told him he did not qualify for hepatitis C treatment or high risk medical status because his liver was not "damage[d] enough" for treatment. Id. As with Wong, plaintiff contends that defendant Hashemi failed to follow the "CCHCS Health Care Policy" to provide treatment, and that defendant acted with intent to deliberately cause him further significant injury. Id.

---

[1] The complaint states the transfer occurred in 2015. ECF No. 1 at 4. However, he alleges that Hashemi examined him in September 2014, "and a couple more times this year of 2015," indicating the transfer occurred in 2014. Id.

6

While plaintiff alleges sufficient facts to show Hashemi knew that he had hepatitis C, it is not clear that defendant's acts constitute deliberate indifference since a decision to not treat hepatitis C after evaluation may reflect an appropriate medical decision about the proper course of treatment. See Moore v. Stevig, No. 1:11-CV-01108-LJO, 2012 WL 1944616, at *4, 2012 U.S. Dist. LEXIS 74055, at *9 (E.D. Cal. May 29, 2012) (physician not deliberately indifferent when he determined hepatitis C treatment was not medically necessary at the time).

To establish deliberate indifference, the complaint must allege facts showing that treatment for hepatitis C was indicated by more than plaintiff's own opinion. Plaintiff claims Hashemi decided not to treat him because his liver was not sufficiently damaged, and there is no indication that Hashemi failed to perform appropriate diagnostic testing. ECF No. 1 at 4. Hashemi's alleged statements indicate that plaintiff would likely receive treatment in the future if his condition deteriorated. This statement suggests that defendant's treatment decisions were made after proper medical evaluation and not with intent to cause further harm as plaintiff claims. Thus, the current allegations show no more than a difference of opinion between plaintiff and defendant as to when his treatment should begin, which is does not state a claim for deliberate indifference.

Plaintiff further argues that Hashemi acted contrary to CDCR medical policy. Id. at 5. If true, this could show that Hashemi acted with deliberate indifference, but the complaint lacks the information necessary to make this inference. Plaintiff alleges the policy allowed treatment for "all genotypes" of hepatitis C with "preapproval through the HO CCHCS HCV oversight committee." Id. at 5. However, plaintiff does not allege facts to show how the policy was violated as applied to him. Plaintiff's allegations suggest that he was denied treatment based on the progression of his disease rather than based on his genotype. There is no indication that a denial based on the severity of plaintiff's hepatitis C was prohibited by policy or that the severity of his condition at the time mandated treatment. In order to state a claim for deliberate indifference based on the policy, plaintiff must allege specific facts that show defendant intentionally interfered with the preapproval process, refused to treat him despite preapproval, or otherwise did not follow a policy that required medical staff to treat plaintiff's specific condition.

7

For these reasons, plaintiff's disagreement with Hashemi's treatment decisions amounts to a difference of opinion based on the current facts and is not enough to establish a claim of deliberate indifference. Accordingly, the claims against Hashemi will be dismissed with leave to amend.

V. Other Allegations Which Fail to State a Claim

A. Claims Against Smiley, Cryer, Lewis, and Beard

Plaintiff alleges that defendants Smiley, Cryer, and Lewis denied his administrative appeals for hepatitis treatment. ECF No. 1 at 4-5. More specifically, he alleges that Smiley, CEO of Health Care Services, and Lewis, Deputy Director of CDCR, denied his appeal after Wong declined treatment. ECF No 1. at 4. Similarly, he claims that after he transferred prisons, Cryer, CEO of Health Care Services, and Lewis again denied his appeal after Hashemi refused treatment. Id. at 4-5. Plaintiff also alleges that Smiley, Cryer, Lewis, and Beard were supervisors of Wong and Hashemi, were aware that the physicians failed to provide treatment, and failed to enforce CDCR medical policy. Id. at 6.

To the extent plaintiff seeks to bring a claim related to the deficiencies in the processing of his grievance, "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.")). Accordingly, the prison grievance procedure does not confer any substantive constitutional rights upon inmates and actions in reviewing and denying inmate appeals generally do not serve as a basis for liability under section 1983. Id. Put another way, prison officials are not required under federal law to process inmate grievances in a specific way or to respond to them in a favorable manner. The Seventh Circuit has observed that

> [o]nly persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.

George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) (internal citations omitted). Therefore,

any claims based solely on a defendant's status as a "reviewer" of plaintiff's grievances will be dismissed. However, because prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, an individual who denies an inmate appeal and who had the authority and opportunity to prevent an ongoing constitutional violation could potentially be subject to liability if the individual knew about an existing or impending violation and failed to prevent it. Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006).

As currently alleged, plaintiff's claims against defendants Smiley, Cryer, and Lewis for denying his grievances are conclusory and make no specific allegations against them. Plaintiff does not state facts indicating that the defendants were aware that he had been wrongfully denied treatment, since his claim is that the denial violated the policy regarding genotypes and he was denied based upon the severity of his condition. ECF No. 1 at 4-5. Plaintiff does not allege facts to show Smiley, Lewis, or Cryer were aware that Wong decided to not treat him based on inadequate diagnostic testing. Id. at 4. In addition, because it does not appear that Hashemi violated plaintiff's rights under the current facts, there is no way his appeal against Hashemi could have made Cryer, Lewis, or Smiley aware of a possible constitutional violation. Accordingly, the current allegations do not state a cognizable claim for relief for denial of administrative appeals, but plaintiff will be given an opportunity to amend. He is advised that if he chooses to amend the complaint, the amended claims will be subject to dismissal upon screening if he does not allege facts showing that defendants were aware of on-going violations of his rights.

To the extent plaintiff seeks to bring a claim against Smiley, Cryer, Lewis, and Beard in their capacities as supervisors, there can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362, 371, 376 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Additionally, "[t]here is no respondeat superior liability under section 1983." Taylor v List, 880 F.2d 1040, 1045 (9th Cir. 1989). "A defendant may be held liable as a supervisor under

§ 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)). A supervisor may be liable for the constitutional violations of his subordinates if he "knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045. Finally, supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

Plaintiff does not claim that any of these defendants were personally involved in Wong or Hashemi's decisions to not treat his hepatitis. ECF No. 1 at 4-5. He does not state any facts that indicate any of the defendants intentionally denied treatment in spite of a recommendation by a physician or the alleged "CCHCS Health Care Policy." Id. In addition, plaintiff's claims that these defendants turned a blind eye to policy violations also fails because the basis for the denial of treatment does not appear to be related to the policy he cites. Id. at 4-6. Finally, plaintiff fails to make a claim that would show the defendants implemented a policy to completely deny inmates hepatitis C treatment or to provide constitutionally inadequate treatment. Id. at 4-6. Accordingly, the current allegations are conclusory and insufficient to state a claim for relief.

For all these reasons, plaintiff's claims against Smiley, Cryer, Lewis, and Beard will be dismissed with leave to amend.

B. Claims Against Kelso

Defendant Kelso, who is the Receiver for CDCR's health care system, is entitled to quasi-judicial immunity. Plata v. Schwarzenegger (Plata), C01-1351-THE, ECF No. 1063 at 5 (N.D. Cal. Jan. 23, 2008) (appointing Kelso as Receiver).[2] In appointing a Receiver, the court stated

---

[2] The court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (continued…)

10

that "[t]he Receiver and his staff shall have the status of officers and agents of this Court, and as such shall be vested with the same immunities as vest with this Court." Plata, ECF No. 473 at 6 (N.D. Cal. Feb. 14, 2006)).

"Absolute judicial immunity is not reserved solely for judges, but extends to nonjudicial officers for 'all claims relating to the exercise of judicial functions.'" In re Castillo, 297 F.3d 940, 947 (9th Cir. 2002) (quoting Burns v. Reed, 500 U.S. 478, 499 (1991) (Scalia, J., concurring in part and dissenting in part)). "Judicial or quasi-judicial immunity is not available only to those who adjudicate disputes in an adversarial setting. Rather, the immunity is extended in appropriate circumstances to non jurists 'who perform functions closely associated with the judicial process.'" Id. at 948 (quoting Cleavinger v. Saxner, 474 U.S. 193, 200 (1985)). "Under federal law, court-appointed 'receivers are court officers who share the immunity awarded to judges.'" Alta Gold Mining Co. v. Aero-Nautical Leasing Corp., 656 F. App'x 316, 318 (9th Cir. 2016) (quoting New Alaska Dev. Corp. v. Guetschow, 869 F.2d 1298, 1303 (9th Cir. 1989)). "[Judicial] immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (internal citations omitted).

Plaintiff brings suit against Kelso, as medical Receiver "appointed . . . to monitor and enforce the medical injunction against CDCR and Jeffrey Beard," for failure to ensure that plaintiff received adequate medical care. ECF No. 1 at 6. Accordingly, defendant is entitled to immunity unless his actions were taken in the complete absence of all jurisdiction. Plaintiff alleges that Kelso knew he was diagnosed with hepatitis C and did not order treatment. Id. at 5. He also alleges that Kelso failed to enforce the "CCHCS Health Care Policy" to provide treatment. Id. at 6. These alleged actions are squarely within the realm of defendant's jurisdiction, as defendant was specifically charged with "the duty to control, oversee, supervise,

---

(citation and internal quotation marks omitted) (collecting cases); Fed. R. Evid. 201(b)(2) (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned).

and direct all administrative, personnel, financial, accounting, contractual, legal, and other operational functions of the medical delivery component of the CDCR." Plata, ECF No. 473 at 2. Defendant's authority over treatment policies and personnel are entirely within his jurisdiction. See Williams v. CDCR, No. 1:14-CV-01912-JLT (PC), 2015 WL 6669816, at *6, 2015 U.S. Dist. LEXIS 147033, at *17 (E.D. Cal. Oct. 29, 2015) (finding no allegation that Kelso acted outside his jurisdiction in light of allegation that he did not properly monitor plaintiff's disease); Martinez v. Beard, No. 1:14-CV-00405-AWI-JLT (PC), 2014 WL 5305883, at *9, 2014 U.S. Dist. LEXIS 147156, at *21 (E.D. Cal. Oct. 15, 2014) (finding no allegation Kelso acted outside his jurisdiction despite plaintiff's allegation that he was liable as Receiver because he acted in such a way to deny medical care). Thus, defendant's alleged failure to order treatment is not sufficient to overcome his immunity. See Mireles, 502 U.S. at 11 ("judicial immunity is not overcome by allegations of bad faith or malice"). Therefore, the court finds that Kelso is entitled to quasi-judicial immunity and suit may not be maintained against him in his capacity as Receiver.

Accordingly, plaintiff's claims against Kelso will be dismissed.

VI. Leave to Amend

For the reasons set forth above, the court finds that the complaint does not state cognizable claims against defendants Hashemi, Smiley, Cryer, Lewis, Beard, and Kelso. However, it appears that plaintiff may be able to allege facts to remedy his claims against Hashemi, Smiley, Cryer, Lewis, and Beard, and plaintiff will be given the opportunity to amend the complaint if he desires.

Plaintiff may proceed forthwith to serve defendant Wong on his claim that Wong acted with deliberate indifference because he decided not to treat him without proper diagnostic testing, or he may delay serving any defendant and amend the complaint to attempt to state cognizable claims against defendants Hashemi, Smiley, Cryer, Lewis, and Beard. Plaintiff is reminded that defendant Kelso is entitled to quasi-judicial immunity in his role as Receiver, and plaintiff can expect that any claims against Kelso will be dismissed if plaintiff chooses to continue pursuing claims against him.

////

Plaintiff will be required to complete and return the attached notice advising the court how he wishes to proceed. If plaintiff chooses to amend the complaint, he will be given thirty days to file an amended complaint. If plaintiff elects to proceed on his claims against defendant Wong without amending the complaint, the court will send him the necessary forms for service of the complaint and the claims against defendants Hashemi, Smiley, Cryer, Lewis, Beard, and Kelso will remain dismissed.

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Also, the complaint must allege in specific terms how each named defendant is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey, 673 F.2d at 268 (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 929 (9th Cir. 2012) (claims dismissed with prejudice and without leave to amend do not have to be re-pled in subsequent amended complaint to preserve appeal). Once plaintiff files an amended complaint, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

VII. Summary

Plaintiff's request to proceed in forma pauperis is granted.

Some of the allegations in the complaint state claims against the defendants and some do

13

not. Plaintiff's claim that Wong did not conduct diagnostic testing before deciding to not treat his condition is sufficient to state a claim of deliberate indifference at this stage and a response from Wong will be required.

Plaintiff's claims against Hashemi are dismissed with leave to amend because the facts plaintiff has alleged are not enough to state a claim for relief, but might be able to with amendment. Plaintiff needs to provide more information to show that Hashemi's decision not to treat him was more than a difference of opinion. For instance, did defendant fail to follow proper medical diagnostic procedures, act against another medical professional's judgment, or take any action contrary to policy? If plaintiff claims Hashemi's failure to treat him was in violation of policy, he needs to briefly explain how the policy was violated. In other words, plaintiff must allege facts that show the denial of treatment was medically unacceptable under the circumstances and caused him further injury. Otherwise, his allegations only show a difference of opinion between himself and Hashemi which is not enough to show defendant acted with deliberate indifference.

Plaintiff's claims against Smiley, Cryer, Lewis, and Beard will also be dismissed with leave to amend because the facts alleged are not enough to state a claim for relief but might state a claim with amendment. Plaintiff needs to show more than the fact that these defendants denied his administrative appeals or were supervisors. To state a claim for relief based on the denial of his appeals, plaintiff must explain what Smiley, Cryer, or Lewis knew about Wong or Hashemi's actions in denying him treatment. For example, he could explain what kind of information he put in his appeal. In order to state a claim against these defendants as supervisors, plaintiff must show that they had some personal involvement, like if they had a policy to deprive inmates of any hepatitis C treatment or he could explain what policies he claims defendants were not enforcing and how they knew the polices were not being followed. Just saying they were supervisors is not enough.

Finally, plaintiff cannot bring a claim against defendant Kelso because he is immune from liability in his role as Receiver. Kelso is dismissed and if plaintiff decides to amend the

////

complaint and includes claims against Kelso in his role as Receiver, those claims will also be dismissed.

Plaintiff must choose to either (1) proceed immediately on his claims against defendant Wong, or (2) try to amend the complaint to state claims against the other defendants. If plaintiff wants to go forward without amending the complaint, his claims against defendants Hashemi, Smiley, Cryer, Lewis, Beard, and Kelso will remain dismissed. If plaintiff chooses to amend his complaint, the amended complaint must include all of the claims plaintiff wants to make, including the ones that have already been found to state a claim, because the court will not look at the claims or information in the original complaint. **In other words, any claims not in the amended complaint will not be considered.** If plaintiff includes a claim against Kelso in an amended complaint, he can expect that claim will be dismissed. Plaintiff must complete the attached notification showing what he wants to do, and return it to the court. Once the court receives the notice, it will issue an order telling plaintiff what he needs to do next (i.e. file an amended complaint or complete and return service paperwork).

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's claims against defendants Hashemi, Smiley, Cryer, Lewis, Beard, and Kelso are dismissed with leave to amend.

4. Plaintiff has the option to proceed immediately on his deliberate indifference claim against defendant Wong as set forth in Section IV.B. above, or to amend the complaint.

////

////

////

5. Within twenty-one days of service of this order, plaintiff shall complete and return the attached form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file a first amended complaint.

DATED: April 27, 2017

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VESTER L. PATTERSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SAM WONG DO, et al.,<br><br>　　　　　Defendants. | No. No. 2:15-cv-2117 AC<br><br>PLAINTIFF'S NOTICE ON HOW TO PROCEED |

　　　　Check one:

\_\_\_\_\_ Plaintiff wants to proceed immediately on his Eighth Amendment claims against defendant Wong without amending the complaint. Plaintiff understands that going forward without amending the complaint means that his claims against defendants Hashemi, Smiley, Cryer, Lewis, Beard, and Kelso will remain dismissed without prejudice.

\_\_\_\_\_ Plaintiff wants to amend the complaint.

DATED:_____

　　　　　　　　　　　　　　　　　　　　　　Vester L. Patterson
　　　　　　　　　　　　　　　　　　　　　　Plaintiff pro se

1